IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA ABNEY | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-6818 |
| | : | |
| CAROLYN W. COLVIN | : | |
| *COMMISSIONER OF THE SOCIAL* | : | |
| *SECURITY ADMINISTRATION* | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                                                           **August 31, 2015**

      Donna Abney seeks review of the final decision of the Commissioner of Social Security denying her claims for supplemental security income (SSI) and disability insurance benefits (DIB). United States Magistrate Judge Jacob P. Hart issued a Report and Recommendation (R&R) recommending Abney's request for review be denied, to which Abney has objected. In her objections, as in her request for review, Abney takes issue with the Commissioner's finding that she can perform work existing in significant numbers in the national economy and is therefore not disabled within the meaning of the Social Security Act. Upon de novo review of the R&R, Abney's objections thereto, and the Commissioner's response, and in light of the Third Circuit Court of Appeals' intervening decision in *Zirnsak v. Colvin*, 777 F.3d 607 (3d Cir. 2014), Abney's objections will be overruled, the R&R will be approved and adopted, and Abney's request for review will be denied.

**BACKGROUND**

      In August 2011, Abney applied for SSI and DIB, claiming she had been disabled since June 7, 2011, as a result of high blood pressure, unstable hypertension, carpal tunnel syndrome,

and lumbar disc/degenerative lumbar spine.[1]  *See* R. at 191.  Abney's claims were initially denied on October 31, 2011.  At Abney's request, a hearing was held before an Administrative Law Judge (ALJ) on July 2, 2012, at which Abney appeared with counsel and testified.  A vocational expert also testified at the hearing.  On July 13, 2012, the ALJ issued a written decision denying Abney's claim.

Applying the Social Security Administration's (SSA) five-step sequential evaluation process for determining whether a claimant is disabled, the ALJ found Abney was not disabled.[2]  Although the ALJ found Abney suffered from the severe impairments of carpal tunnel syndrome, degenerative disc disease, and degenerative joint disease, as well as asthma, a non-severe impairment, he concluded these impairments did not meet or medically equal a listed impairment.  *See* R. at 21-23.  Of particular relevance here, the ALJ found, at step four of the process, that Abney

---

[1] In her SSI application, Abney stated her disability began on January 1, 2009, R. at 165; however, she later amended her disability onset date to June 7, 2011, the onset date identified in her DIB application, R. at 37-38, 161.

[2] The Commissioner uses the same five-step process to determine whether a claimant is disabled in both SSI and DIB cases.  *See* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI).  At the first step, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity.  If so, the claimant is not disabled.  At the second step, the Commissioner must determine whether the claimant has a severe, medically determinable physical or mental impairment.  If not, the claimant is not disabled.  At the third step, the Commissioner must determine whether the claimant's severe impairment meets or is medically equivalent to a "listed" impairment, i.e., an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404.  If so, the claimant is disabled.  If not, the Commissioner must assess the claimant's "residual functional capacity"—i.e., "the most [the claimant] can still do despite [his or her] limitations."  20 C.F.R. §§ 404.1545(a)(1) 416.945(a)(1).  The Commissioner must then determine, at the fourth step, whether the claimant retains the residual functional capacity to perform her past relevant work.  If so, the claimant is not disabled.  If not, the claimant will be found to be disabled unless the Commissioner demonstrates, at the fifth step, the claimant is capable of performing other available work.  *See Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001) (describing the five-step sequential evaluation process).

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with occasional pushing and pulling with the dominant right upper extremity, occasional climbing of ramps and stairs, but no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; occasional overhead reaching with the dominant right upper extremity, and frequent handling, fingering, and feeling with the dominant right hand in a work environment wherein she avoids concentrated exposure to extreme heat and cold, dust fumes, odors, and pulmonary irritants, as well as vibration, and hazards, such as unprotected heights and moving machinery. *She is limited to unskilled work with routine and repetitive tasks*.

R. at 24 (emphasis added); *see also id.* at 25. The ALJ concluded Abney's limitations precluded her from performing her past relevant work as a non-teaching assistant and a school police officer. Relying on the hearing testimony of the vocational expert, however, the ALJ found Abney was able to perform the requirements of other occupations with jobs existing in significant numbers in the national economy, including the occupations of charge account clerk, call out clerk, and surveillance system monitor. *See* R. at 27.

On September 19, 2013, the Appeals Council denied Abney's request for review, rendering the ALJ's decision the final decision of the Commissioner in her case. Abney thereafter sought review in this Court. In her request for review, Abney challenges the ALJ's finding that she could perform the requirements of the occupations of charge account clerk, call out clerk, and surveillance system monitor, arguing this finding is inconsistent with the ALJ's finding that Abney is limited to unskilled work with routine and repetitive tasks. Specifically, Abney argues the level 3 reasoning skills required by each of the foregoing occupations[3] are incompatible with a limitation to routine and repetitive tasks.

---

[3] According to the *Dictionary of Occupational Titles*, all three occupations require a reasoning development level of 3, defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations," *Dictionary of Occupational Titles*, Appendix C, 1991 WL 688702 (4th ed. 1991).

On June 30, 2014, the Magistrate Judge issued an R&R recommending Abney's request for review be denied.  Although recognizing districts courts within the Third Circuit are divided on the issue, the Magistrate Judge rejected Abney's argument that there is a per se conflict between the ability to exercise level 3 reasoning skills and a limitation to routine and/or repetitive tasks.  The Magistrate Judge also found Abney had not shown she was in fact unable to engage in level 3 reasoning.  Abney objects to the R&R, arguing the ALJ's finding that she is limited to routine and repetitive tasks means she cannot perform jobs requiring level 3 reasoning skills and urging the Court to remand the case to the Commissioner to address this discrepancy.

**DISCUSSION**

Under 28 U.S.C. § 636(b)(1), this Court reviews Abney's objections to the R&R de novo.  Review of a final decision of the Commissioner of Social Security, however, is limited to determining whether the decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rutherford*, 399 F.3d at 552 (citation and internal quotation marks omitted).  Although substantial evidence is "more than a mere scintilla," it "may be somewhat less than a preponderance of the evidence."  *Id.* (citation and internal quotation marks omitted).

Abney's challenge concerns the ALJ's finding, at step five of the disability inquiry, that Abney is capable of making a successful adjustment to other work existing in significant numbers in the national economy.  In making this finding, the ALJ relied on the testimony of a vocational expert, who in turn relied on the *Dictionary of Occupational Titles* (DOT), a vocational dictionary published by the Department of Labor containing information about most occupations in the national economy and "lists maximum requirements of [those] occupations as

generally performed." Social Security Ruling (SSR) 00-4P, 2000 WL 1898704, at *2-3 (S.S.A. 2000).

The DOT lists requirements for each occupation in several different categories, including Specific Vocational Preparation (SVP) and General Educational Development (GED). SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, 1991 WL 688702. The DOT assigns occupations an SVP level based on a 9-level scale, on which an SVP level of 1 signifies "[s]hort demonstration only," and an SVP level of 9 corresponds to "[o]ver 10 years." *Id.* The SVP levels in the DOT correspond to the SSA's classifications of occupations as unskilled, semi-skilled, and skilled. *See* SSR 00-4P, 2000 WL 1898704, at *3. Unskilled work, defined by the SSA as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time," 20 C.F.R. §§ 404.1568(a), 416.968(a), corresponds to an SVP level of 1 or 2, *see* SSR 00-4P, 2000 WL 1898704, at *3.

GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance" and is measured in three areas: Reasoning Development, Mathematical Development, and Language Development. DOT, Appendix C, 1991 WL 688702. Reasoning Development is rated on a six-level scale, on which a reasoning level of 3 corresponds to the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*[4]

---

[4] Reasoning level 2, in contrast, denotes the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* Reasoning level 1

5

At the hearing, the ALJ asked the vocational expert whether there were any unskilled, sedentary occupations in the national economy that a hypothetical individual with the same age, education, and past relevant work experience as Abney, and with the residual functional capacity described above, including the restriction to work involving "routine and repetitive tasks," could perform. R. at 64-65. The vocational expert responded such occupations existed, and identified the occupations of charge account clerk, call out clerk, and surveillance system monitor, noting each occupation was sedentary and unskilled with an SVP of 2. *Id.* at 65.[5] The vocational expert also confirmed the occupations she identified were "just a representative sampling of jobs available," and responded affirmatively to the ALJ's question as to whether the information she had provided was consistent with the information in the DOT. *Id.* at 65-66. The vocational expert did not address—and was not asked to address—either the reasoning level associated with the occupations she identified or Abney's ability to meet the reasoning requirement for the jobs. Although the ALJ offered Abney's counsel the opportunity to question the vocational expert, counsel declined to do so. *See id.* at 67.[6]

---

denotes the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.*

[5] The vocational expert also responded to a second hypothetical posed by the ALJ involving a more restrictive residual functional capacity that included additional limitations based on a medical source statement completed by Abney's physician. The vocational expert testified a hypothetical individual with the same age, education, and past relevant work experience as Abney, and with the limitations identified by Abney's physician, would not be able to perform any work in the national economy because such a person could not work full-time and would have absences from work "far exceed[ing] whatever is considered reasonable and customary." R. at 66-67. In his written decision, however, the ALJ did not accept the physician's restrictive assessment.

[6] Counsel instead noted the claimant was "hanging [her] hat" on the more restrictive residual functional capacity reflected in the ALJ's alternative hypothetical. *See* R. at 67.

Abney now argues the ALJ's finding she could perform the requirements of the occupations identified by the vocational expert is not supported by substantial evidence because each of those occupations requires the ability to exercise level 3 reasoning skills, and that reasoning ability is inconsistent with the ALJ's finding Abney is limited to routine and repetitive tasks. Abney maintains the case must be remanded to permit the ALJ to resolve this conflict between the vocational expert's testimony that a person limited to routine and repetitive tasks could perform the occupations of charge account clerk, call out clerk, and surveillance system monitor, and the reasoning requirement for these occupations in the DOT.

An ALJ has a duty to develop the record fully in a Social Security case, even when the claimant is represented by counsel. *See Rutherford*, 399 F.3d at 557. As part of this duty, the ALJ has an affirmative obligation to inquire about and resolve conflicts between occupational evidence from the DOT and evidence provided by vocational experts. *See id.* at 556-57; SSR 00-4P, 2000 WL 1898704. "Specifically, an ALJ is required to (1) ask, on the record, whether the [vocational expert's] testimony is consistent with the DOT, (2) elicit a reasonable explanation where an inconsistency does appear, and (3) explain in its decision how the conflict was resolved." *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014) (citation and internal quotation marks omitted). Although failure to comply with these requirements "may warrant remand in a particular case, . . . the presence of inconsistencies does not *mandate* remand, so long as substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." *Id.* (citations and internal quotation marks omitted).

Here, the ALJ asked the vocational expert whether her testimony was consistent with the DOT, thereby meeting "his affirmative obligation to inquire about inconsistencies." *Id.* The question is thus whether the ALJ should have recognized the inconsistency on his own and

7

obtained a reasonable explanation for it. The analysis of these issues is controlled by the Third Circuit's decision in *Zirnsak*, which was issued after the R&R in this case was prepared.

Like this case, *Zirnsak* involved a challenge to an ALJ's finding that the claimant was capable of performing certain jobs with a GED reasoning level of 3 as inconsistent with the ALJ's finding that the claimant was limited to "simple and repetitive tasks involving routine work processes and settings." *Id.* (citation and internal quotation marks omitted). There, as here, the vocational expert confirmed her testimony was consistent with the DOT, and neither the claimant nor her attorney identified any reasoning level inconsistency at the hearing. As a result, the ALJ did not elicit an explanation for the alleged inconsistency or explain how any conflict was resolved.

In evaluating the claimant's argument that the ALJ's failure to resolve the reasoning level conflict warranted remand, the Court of Appeals acknowledged the split of authority in the federal courts "as to whether an inherent conflict exists between a job requiring level 3 reasoning and a finding that a claimant should be limited to simple, routine tasks and unskilled work." *Id.* at 617-18 (collecting cases). The Court declined to find a per se conflict, but instead focused its analysis on "whether a failure to inquire about or reconcile a conflict caused any harm to the claimant" to determine whether remand was necessary. *Id.* at 618. The Court cited approvingly the Seventh Circuit's suggestion in *Terry v. Astrue*, 580 F.3d 471 (7th Cir. 2009), that "because the claimant did not point out the conflict at trial, she was required to show that the conflict was 'obvious enough that the ALJ should have picked up on [it] without any assistance.'" *Zirnsak*, 777 F.3d at 618 (quoting *Terry*, 580 F.3d at 478) (alteration in original). The Court held any conflict was not sufficiently obvious to require remand based on three factors: (1) the claimant's failure to "seriously argue" she was incapable of performing the jobs identified by the vocational

expert and the existence of evidence in the record suggesting she could, in fact, perform the jobs; (2) the claimant's counsel's failure to identify any inconsistencies between the vocational expert's testimony and the DOT at the hearing; and (3) the fact the occupations identified by the vocational expert were only representative examples, and not an exhaustive list, of the jobs the claimant was capable of performing.  *Id.* at 618-19.

Consideration of the factors identified by the Court in *Zirnsak* requires the same result here.  First, like the claimant in *Zirnsak*, Abney advances no factual argument that she is actually incapable of engaging in level 3 reasoning or performing the jobs identified by the vocational expert, but instead relies solely on what she maintains is an inherent conflict between a limitation to routine and repetitive tasks and level 3 reasoning ability.  *See* Claimant's Objections 6-7 (arguing "[a]ll that she has to establish to obtain a remand is to show that a limitation to routine and repetitive tasks is inconsistent with performing a job that requires level 3 reasoning").  As the Magistrate Judge noted, moreover, the record does not suggest Abney is in fact incapable of level 3 reasoning.  Abney has a GED and previously worked for the School District of Philadelphia as both a non-teaching assistant and a school police officer, eventually leaving her employment due to the physical demands of the job.  *See* R. at 26, 41-45.  Although Abney testified she has constant, intense pain in her lower back, arms, wrists, and hands which, among other things, makes it difficult for her to maintain attention and concentration, *see* R. at 25, 46-47, 54, the ALJ found Abney's statements concerning "the intensity, persistence and limiting effects of" her pain were "not fully credible," *id.* at 25.  The ALJ noted, in contrast to Abney's characterization of her pain, the objective evidence "show[ed] only 'minimal' to 'mild' findings," and Abney had "treated conservatively," despite the high intensity of pain she alleged. *Id.*

Second, as noted, Abney's counsel did not identify any inconsistencies between the vocational expert's testimony and the DOT at the hearing. Rather, when given the opportunity to question the vocational expert, Abney's counsel declined to do so, choosing instead to rely on the vocational expert's testimony that Abney could not perform any work in the national economy if her residual functional capacity was as characterized by her physician (whose assessment the ALJ ultimately did not credit). Finally, as in *Zirnsak*, the vocational expert confirmed the occupations she identified were "just a representative sampling of jobs available." R. at 65-66. As in *Zirnsak*, "the combination of these factors compels [a] finding that any conflict [was] not so obvious that the ALJ should have pursued the question," *Zirnsak*, 777 F.3d at 619 (citation and internal quotation marks omitted) (second alteration in original), and remand is therefore not warranted in this case.

Because, in light of *Zirnsak*, this Court agrees with the Magistrate Judge that Abney's challenge to the ALJ's finding she is not disabled lacks merit, Abney's objections to the R&R will be overruled, the R&R will be approved and adopted, and Abney's request for review will be denied. An appropriate order follows.

BY THE COURT:

    /s/ Juan R. Sánchez
Juan R. Sánchez, J.